# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
            **Plaintiff,**

    **v.**                                                    **Case No. 06-CR-336**

**JONATHAN DAVID COLLA**
            **Defendant.**

## DECISION AND ORDER

The government charged defendant Jonathan David Colla and others by criminal complaint with conspiracy to distribute cocaine, and a magistrate judge issued a warrant for defendant's arrest. Following his arrest, defendant made statements to law enforcement, which he now seeks to suppress, arguing that the warrant was deficient. The magistrate judge handling pre-trial proceedings in the case reviewed the warrant application, found that it established probable cause to arrest and therefore recommended that the motion be denied. Defendant objected, so I reviewed the matter de novo. See Fed. R. Crim. P. 59(b)(3).

Because I harbored doubts as to the warrant's validity, I held an evidentiary hearing to determine whether defendant's arrest could be supported as a warrantless arrest. The government presented testimony from the lead agent in the case, who supplemented the information contained in his application. Upon review of the testimony, I find that although the government's case against defendant at the time of his arrest was hardly overwhelming, the evidence collected to that point was sufficient to establish probable cause for an arrest. Therefore, I deny the motion.

# I.  THE WARRANT

On November 29, 2006, based on the application of Special Agent Thomas Gorecki, a magistrate judge issued a complaint and a warrant for defendant's arrest for conspiring to distribute cocaine.  In his affidavit, Gorecki averred that Javier Aguilera operated a large-scale cocaine trafficking organization, and that defendant purchased cocaine in 1/8 to 1/4 ounce amounts from Aguilera.  (Gorecki Aff. ¶¶ 8, 13.)  As is pertinent to defendant, Gorecki further averred:

> 73. Jonathan David Colla, DOB 12/10/1983, resides at 495 S. Allen Road, Waukesha.  Colla purchased cocaine from Javier Aguilera in the 1/8 ounce to 1/4 ounce amounts.  During the monitoring of Javier Aguilera's cellular telephone between July 11, 2006 and August 25, 2006, 19 drug related conversations were intercepted.  Javier Aguilera referred Colla to Aguilera's cousin, Christian Gabriel Martinez, a/k/a "Gordo," in order to obtain additional amounts of cocaine.  Aguilera also used Colla to test the purity of cocaine that Aguilera had purchased on August 14, 2006.  The following are examples of drug related conversations between Javier Aguilera and Colla.

> 74. For example, on July 14, 2006, Javier Aguilera placed a telephone call to telephone number 262-798-1385 and conversed with Jonathan Colla.  After initial conversation Aguilera asked, "What do you need."  Colla responded, "Oh just a beef."  Aguilera asked, "What's that, like a eight?"  Colla answered, "Yeah."  Aguilera stated, "Alright I got you."  Based upon my training, experience and familiarity with the investigation, I know that they were referring to an eight-ball of cocaine which is one eighth of an ounce.

> 75. On August 12, 2006, Javier Aguilera received a telephone call from a telephone number 262-370-7424 and conversed with Jonathan Colla.  After initial greetings Aguilera informed Colla that he wasn't available.  Aguilera told Colla, "Call my cousin up."  Colla repeated, "Call your cousin?"  Aguilera responded affirmatively and Collar [sic] replied, "Alright bro."  Based upon my training, experience and familiarity with the investigation, I know that Javier Aguilera referred to Jose Aguilera.

(Id. ¶ 73-75.)

Agents arrested defendant on December 2, 2006, and he subsequently made statements to law enforcement.  Defendant seeks suppression of all evidence gathered as a

2

result of the arrest, including his post-arrest statements, based on the insufficiency of the arrest warrant.

A magistrate judge may issue an arrest warrant based on a showing of probable cause that the defendant has committed an offense.  United States v. Hondras, 296 F.3d 601, 602 (7th Cir. 2002); Fed. R. Crim. P. 4.  Probable cause to issue an arrest warrant exists when the application sets forth facts and circumstances sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed the offense alleged.  See Michigan v. DeFillippo, 443 U.S. 31, 37 (1979).

The instant warrant application did not specify how (by voice recognition, telephone number association or any other means) Gorecki identified defendant as the person who spoke to Aguilera; nor did it explain how, even if defendant was on the phone with Aguilera, the conversations demonstrated that defendant joined the conspiracy with an intent to further it. Merely buying drugs from a conspirator does not make someone a member of a conspiracy. See, e.g., United States v. Thomas, 150 F.3d 743, 745 (7th Cir. 1998).  Therefore, I concluded that this was best analyzed as a warrantless arrest.[1]

## II.  WARRANTLESS ARREST

An officer may legally arrest a suspect without a warrant if he has probable cause to believe that the suspect committed a crime and the suspect is not in his home.  United States

---

[1]The government did not assert application of the good faith doctrine, which requires the court to deny a motion to suppress evidence gathered pursuant to a warrant later found deficient, if the officers could have reasonably believed that the facts set forth in the affidavit were sufficient to support a magistrate's finding of probable cause.  See United States v. Leon, 468 U.S. 897, 920-24 (1984).   It appears that the doctrine applies to arrest as well as search warrants.   See, e.g., Arizona v. Evans, 514 U.S. 1, 14-15 (1995).   Under all of the circumstances, I see no reason why the officers could not have relied in good faith on the warrant for defendant's arrest issued in this case.

3

v. Sawyer, 224 F.3d 675, 678 (7th Cir. 2000). Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. United States v. Navarro, 90 F.3d 1245, 1253 (7th Cir. 1996). It must be more than a hunch but is something less than a preponderance. United States v. Limares, 269 F.3d 794, 798 (7th Cir. 2001).

The court examines the totality of the circumstances known to the police at the time of the arrest to determine whether the officer could have reasonably believed that the person committed a crime. See United States v. Scheets, 188 F.3d 829, 839 (7th Cir. 1999); United States v. Navarro, 90 F.3d 1245, 1254 (7th Cir. 1996). However, because probable cause is judged by an objective standard, the subjective view of the officer as to the legal basis for the arrest is irrelevant. Potts v. City of Lafayette, Ind., 121 F.3d 1106, 1113 (7th Cir. 1997). In other words, the officer must have probable cause to believe that a crime has been committed, not necessarily the crime(s) with which the defendant is later charged, Calusinski v. Kruger, 24 F.3d 931, 935 (7th Cir. 1994), or the offense(s) actually invoked by the officer at the time of the arrest, Devenpeck v. Alford, 543 U.S. 146, 152-53 (2004).

At the hearing in this case, Agent Gorecki testified that he has over twenty years of experience in investigating drug crimes, and that he was the lead agent in this investigation. Gorecki stated that he obtained a wiretap for the phone of Javier Aguilera, whom he suspected of being a large-scale cocaine distributor, and that defendant's name came up during the interception. Specifically, on July 14, 2006, Aguilera engaged in a drug-related conversation with someone he referred to as "Colla." Gorecki obtained subscriber information for the phone number associated with "Colla" and learned that it belonged to Alfred and Diane Colla. Gorecki testified that he identified defendant as the relevant speaker in the Colla household when, on August 10, Aguilera called the home and asked for "Jon." The female who answered the

4

phone indicated that "Jon" was at work, seemed upset and hung up. Gorecki testified that officers then checked a computer database comprised of public records (such as DMV and court records) in order to discover the names of those associated with the Colla household. Pursuant to that search, officers learned that the defendant, Jonathan Colla, lived at the home along with Alfred and Diane (whom Gorecki believed to be Jonathan's parents). Gorecki testified that he had identified drug dealers through these types of records many times. Gorecki further testified that the person identified as Colla who engaged in the drug-related calls with Aguilera sounded like a young person, consistent with defendant's date of birth of 12/10/1983, and that Colla's voice was always the same.

Gorecki testified that agents overheard a total of nineteen drug-related calls between defendant and Aguilera between July 14 and August 19, 2006, when Aguilera was arrested. Gorecki testified that he managed the wire room in this case and personally listened to all of the pertinent calls in English. He testified that based on his training, experience and familiarity with this investigation, the calls between defendant and Aguilera were suggestive of drug trafficking. During the recorded calls, defendant ordered cocaine from Aguilera in amounts ranging from 1/8 to ½ ounce, consistent with possible distribution. During other calls, Aguilera asked defendant to "test" the quality of some cocaine he had received and advised defendant that he was collecting (what Gorecki believed to be) drug debts. During yet another call, defendant asked Aguilera if he could bring a friend to one of their meetings, which Gorecki found significant because drug dealers typically do not bring non-involved individuals to deals; Gorecki suspected that this other person could be defendant's customer. At another point, Aguilera referred defendant to his cousin, who also dealt cocaine, because Aguilera believed things were "too hot."

5

Based on the totality of the circumstances, I find that Gorecki had probable cause to arrest defendant. First, I find that the information gathered by the officers was sufficient to identify defendant as "Colla" – the young man who engaged in ostensibly drug-related conversations with Aguilera. Aguilera typically called the person "Colla" but on the occasion on which a female – presumably defendant's mother – answered the phone, he asked for "Jon." Gorecki obtained the identities of those associated with the home, which included defendant, from a reliable public database he had used to identify dealers in other cases. The person identified as Colla on the calls sounded like a young person, consistent with defendant's date of birth. This evidence was sufficient to create a reasonable belief that defendant spoke to Aguilera about drugs.

Second, the contents of the calls were sufficient to create a reasonable belief that defendant committed a crime. At the hearing, defendant conceded that the crime need not be the conspiracy identified in the criminal complaint/arrest warrant. Nevertheless, I find the evidence sufficient for Gorecki to reasonably conclude that defendant had joined Aguilera's conspiracy. At the hearing, defendant noted the lack of direct evidence that he re-sold cocaine. However, proving a conspiracy under 21 U.S.C. § 846 requires only that (1) two or more people agreed to commit an unlawful act and (2) the defendant knowingly and intentionally joined in that agreement. No overt act is required. See, e.g., United States v. Duran, 407 F.3d 828, 835 (7th Cir. 2005). The phone calls in this case suggest a level of trust and continuous course of dealing between Aguilera and defendant. See, e.g., United States v. Bustamante, 493 F.3d 879, 884-85 (7th Cir. 2007), cert. denied, 128 S. Ct. 1460 (2008) ("Factors indicating a drug conspiracy include transactions that involve large quantities of drugs, prolonged cooperation between parties, standardized dealings, a level of mutual trust, and sales on credit."). The calls

6

also indicate that at one point Aguilera asked defendant to "test" some cocaine he had received. Thus, while this evidence is hardly overwhelming, it was sufficient for Gorecki to reasonably believe that defendant joined Aguilera's conspiracy.

It is true that at the time of the arrest Gorecki was aware of no witness who indicated that defendant purchased cocaine from Aguilera or that defendant sold cocaine. Gorecki also admitted that the calls contain no direct references to defendant re-selling any of the cocaine he ostensibly received from Aguilera or sharing in Aguilera's profits. Nor did defendant speak to any other conspirator during the calls. Gorecki further admitted that the amounts defendant ostensibly purchased from Aguilera could be consistent with heavy, personal use. However, probable cause is not certainty; the evidence need not rise to the level needed to support a conviction, see, e.g., United States v. Covarrubias, 65 F.3d 1362, 1368 (7th Cir. 1995); it need not even be a preponderance, see Limares, 269 F.3d at 798. Further, the possible existence of non-felonious explanations does not defeat probable cause, see, e.g., United States v. Funches, 327 F.3d 582, 587 (7th Cir. 2003), and defendant cites no case holding that recorded phone calls alone cannot support a finding of probable case that a defendant joined a conspiracy.

In any event, the evidence is surely sufficient to create a reasonable belief that defendant violated 21 U.S.C. § 843(b), use of a telephone to facilitate a drug trafficking offense. The Seventh Circuit has held that simply calling a drug dealer to obtain drugs for one's own personal use is sufficient to sustain a conviction under this statute. See United States v. Kozinski, 16 F.3d 795, 807 (7th Cir.1994); United States v. Binkley, 903 F.2d 1130, 1135-36

7

(7th Cir. 1990).[2]  The recorded calls are reasonably interpreted as depicting defendant doing just that.

Defendant argued that simple drug possession, a misdemeanor offense, could not support a warrantless arrest because the offense was not committed in the officer's presence. Because I find probable cause that defendant committed the felonies discussed above, I need not address this argument.  In any event, I do note that the Seventh Circuit has held that this common law rule is not part of the Fourth Amendment.  See Woods v. City of Chicago, 234 F.3d 979, 991-95 (7th Cir. 2001).[3]

## III.  CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's motion to suppress (R. 279) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 3rd day of May, 2008.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

---

[2]There is a circuit split on this issue, see United States v. Abuelhawa, No. 07-4639, 2008 WL 1837358, at *4 (4th Cir. Apr. 25, 2008), but I must follow the Seventh Circuit's view.

[3]Virginia v. Moore, No. 06-1082, 2008 WL 1805745 (U.S. Apr. 2008) is not to the contrary.  In that case, the Court held that warrantless arrests for misdemeanors committed in the presence of the officer are reasonable under the Fourth Amendment, even if a state enacts a statutory restriction on such arrests.  Id. at *8.  I do not read Moore as requiring that the arrest be in the officer's presence.

8